**AFFIRMED; Opinion Filed April 10, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01674-CV

### IN THE INTEREST OF A.W. AND D.W., CHILDREN

**On Appeal from the 422nd Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 86044-422**

## MEMORANDUM OPINION

Before Justices Moseley, Bridges, and Evans
Opinion by Justice Evans

A.P.[1](Mother) appeals from a judgment terminating her parental rights to A.W. and D.W.

In two issues, Mother contends: (1) she received ineffective assistance of counsel at trial, and

(2) the evidence was insufficient to establish that termination was in the children's best interest.

For the reasons that follow, we affirm.

### BACKGROUND

The Texas Department of Family and Protective Services received a report on January

22, 2012 that the children, six-year-old A.W. and five-year-old D.W., were currently living at

Mother's grandparents' home because Mother was using drugs and unable to care for them.

There was also an allegation that family members were aware that A.W. may have been sexually

abused, but failed to address or report it. During her initial interview with the Department in

---

[1] To protect the privacy of the parties, we identify the children and their relatives by their initials. *See* TEX.
FAM. CODE ANN. § 109.002(d) (West 2014); *see also* TEX. R. APP. P. 9.8.

February 2012, Mother denied the allegations of sexual abuse and also denied using drugs or having an addiction despite testing positive on two separate occasions for methamphetamines and amphetamines. Erica Larry, an investigator with the Department testified that Mother's maternal grandparents were inappropriate caregivers for the children because, among other things, they were enabling Mother. She also noted that the grandparents' son, a registered sex offender, was living with them.[2] Although the Department explored the possibility of a long-term placement of the children with other relatives, they were unsuccessful.

On June 1, 2012, the Department filed a petition for temporary managing conservatorship of the children citing Mother's drug use, her unstable residence, and her lack of motivation to complete services recommended by the Department. At that time, the Department pursued a dual track approach to the case providing services in aid of possible reunification, but also reserving its alternative right to seek termination of parental rights. Mother signed a family service plan on June 27, 2012 that, among other things, required her to participate and complete a drug treatment program, comply with random drug tests, refrain from any criminal activity, as well as obtain and maintain stable and appropriate housing. Of the eight drug tests performed on Mother after she signed the service plan, six tested positive for methamphetamines and amphetamines.[3] At the permanency conference on October 23, 2012, the Department decided to proceed with termination of Mother's parental rights due to her failure to progress with services and lack of a stable home.[4] Mother continued to test positive on subsequent drug tests and also admitted to using methamphetamines on March 17, 2013.[5] After a jury trial in November 2013,

---

[2] The allegations of sexual abuse do not involve the registered sex offender.

[3] The tests were performed in July, August, and September of 2012. Two of the drug tests performed in August were negative for all drugs tested.

[4] The children's father was incarcerated at the time the Department sought their removal in June 2012. Prior to trial, father voluntarily relinquished his parental rights.

[5] From November 12 through March 19, 2013, Mother tested positive seven of the eleven times tested.

the trial court rendered a judgment terminating Mother's parental rights to both children. Mother then filed this appeal.

## ANALYSIS

### I.     *Ineffective Assistance*

In her first issue, Mother contends she received ineffective assistance of counsel at trial because her attorney failed to file affirmative pleadings allowing her to submit a jury question on the issue of whether or not Mother should be appointed a possessory conservator as an alternative to termination. To succeed on her ineffective assistance claim, Mother must demonstrate not only that her counsel's performance was deficient, but also show that the claimed deficiency prejudiced her case. *See In re M.S.*, 115 S.W.3d 534, 544–45 (Tex. 2003). Here, Mother's ineffective assistance claim is based on the absence of a jury submission seeking her appointment as a possessory conservator. Accordingly, to prevail on this issue, Mother must demonstrate she would have been entitled to the jury submission if the issue had been properly pleaded and the question properly requested.

We review a trial court's jury charge submission for an abuse of discretion. *See Tex. Dept. of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990) (op. on reh'g). In the context of a parental termination case, the controlling question is whether a parent's rights should be terminated. *Id.*; *see also In re J.T.G.*, 121 S.W.3d 117, 129 (Tex. App.—Fort Worth 2003, no pet.). Consequently, the trial court does not abuse its discretion in refusing to submit to the jury a question concerning conservatorship even when the issue is properly pleaded or tried by consent. *See In re C.G., III,* No. 05-13-01552-CV, 2014 WL 1022323 at *1 (Tex. App.—Dallas March 11, 2014, no pet. h.) (mem. op.); *J.A.B. v. Tex. Dept. of Family and Protective Servs.*, No. 03-13-00273-CV, 2013 WL 4487513 at *2 (Tex. App.—Austin Aug. 14, 2013, pet. denied) (mem. op.); *Ayala v. Tex. Dept. of Family and Regulatory Servs.*, No. 03-09-00121-CV, 2010

WL 3672351 at \*4 (Tex. App.—Austin Sept. 16, 2010, no pet.) (mem. op.). Because Mother has not established she would have been entitled to a jury question on conservatorship even if the issue had been pleaded and the question requested, her ineffective assistance claim necessarily fails. We resolve Mother's first issue against her.

## II. *Best Interest of the Children*

In her second issue, Mother challenges the legal and factual sufficiency of the evidence to show that that it was in the children's best interest to terminate her parental rights. When analyzing a factual sufficiency complaint, we review the entire record to determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the State's allegations. *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002) (citing *In re C.H.* 89 S.W.3d 17, 25 (Tex. 2002)). For a legal sufficiency review, we look at all the evidence in the light most favorable to the jury finding to determine whether a reasonable trier of fact could have formed a firm belief that its finding was true. *Id*. at 266.

When reviewing the sufficiency of a best interest finding, we consider, among other evidence, the *Holley* factors which include the children's desire, the children's current and future emotional and physical needs, the current and future emotional and physical danger to the children, Mother's parenting abilities, any available programs to assist Mother to promote the children's best interest, plans for the children by Mother or the Department, the stability of the home or proposed placement, Mother's acts or omissions suggesting the existing parent-child relationship is not a proper one, and any excuse for the parent's acts or omissions. *See In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Lack of evidence of one or more of these factors does not preclude a finding that termination is in the best interest of the children. *See C.H.*, 89 S.W.3d at 27. Conversely, evidence of a single factor may be adequate in a particular case to support a finding that

termination is in the children's best interest. *In re A.T.,* 406 S.W.3d 365, 370–71 (Tex. App.—Dallas 2013, pet. denied). Nevertheless, scant evidence of each factor will not support such a finding. *Id.*

Mother argues her parental rights were improperly terminated because the evidence merely showed that her failure to provide a more desirable degree of care and support for her children was due solely to misfortune or her lack of intelligence or training rather than indifference or malice. She contends there was no evidence that the children did not want to be with her and the recording shown to the jury of one of her visits with the children suggested the contrary. She further asserts there was no evidence the children had any specialized emotional or physical needs and the only potential future dangers involved the children's exposure "to drug usage or an unfit relative should [Mother] relapse."

Mother contends evidence that she had been sober since July 2013, and that local services and programs were available to prevent her from relapsing "and thus improve her parenting skills" were factors that weighed in her favor. She also asserts that, because the Department had not yet identified a permanent home for the children and they were thriving in their current placement, she was not prevented from continuing with her programs so that she could eventually be reunified with her children. Additionally, Mother argues there was no evidence that when she left the children in her grandparents' care, she was aware the children might be sexually abused. Finally, Mother asserts there was no evidence that she used drugs in her children's presence in a way that endangered them.

At the time of trial, Mother was twenty-eight and admitted that she had been using methamphetamines since she was twenty-six. She also admitted that she had used drugs when

the children were in the house.[6] Despite the Department's involvement with her children from January 2012 through July of 2013, Mother continued to use drugs and there was evidence that she was under the influence during drug counseling sessions and visitations with her children. Mother had only been sober for about 120 days at the time of trial. Psychologist Mark Foster testified that his July 2012 evaluation of Mother revealed she had borderline intellectual functioning with an IQ of 72 and poorly developed common sense reasoning and decision making skills. She also had little awareness of what constitutes age appropriate behavior in children. According to Foster, ninety-two percent of people with amphetamine use will relapse after seven years of sobriety. He further testified that if she regained custody of her children, Mother would need a great deal of support from high functioning persons to assist her co-parent her children. He opined Mother would need a very structured environment and a fairly dramatic change in the persons that were her friends when she using versus those that would support her in her recovery.

Betty Cannon, a licensed professional counselor, testified that the Department referred Mother to her for counseling services in August 2012. She saw Mother for six to eight sessions. Cannon indicated that Mother appeared tired, unfocused, and frustrated during most of her sessions and couldn't understand how her drug use could affect her children when she never used drugs in their presence. Cannon tried to make Mother aware that when a child under eighteen is in a person's care, using drugs could affect that person's thinking and ability to respond to certain things. Mother did not take responsibility for her actions and did not achieve an awareness of how using drugs would affect her ability to parent her children. Cannon also stated she was unable to help Mother gain awareness of her role as a parent in child development because Mother did not seem interested. Cannon testified that based on her last contact with

---

[6] Mother denied that the children saw her using drugs in the home.

Mother in October 2012, she would recommend not returning the children to Mother. Cannon stated Mother could never admit she did anything wrong to cause the Department to come to the family.

Jen Smith, a mental health counselor, testified that Mother was in her outpatient group from December 2012 through April 2013. She indicated that Mother completed all eighteen sessions of her intensive outpatient treatment (IOP). Additionally, Mother participated in eighteen out of the twenty sessions of supportive outpatient treatment (SOP). Smith was also in contact with Mother during her inpatient treatment at Nexus Recovery for two week starting on July 19, 2013. Smith testified that Mother was very motivated for treatment and continued to take action, even though she seemed to struggle.

Marti Koenig, a substance abuse counselor with Lakes Regional MHMR testified that she had been seeing Mother since August 12, 2013 for outpatient group and individual counseling. Koenig indicated that Mother was motivated not to relapse, and her relapse plan included talking to her grandmother and her sponsor. Koenig noted that she anticipated that Mother would stay sober because she has been doing things that could keep her sober like completing IOP, almost completing SOP, and attending a twelve step program. Koening opined that Mother understands what was going on in group counseling and had more insight into her drug addiction and intelligence than people gave her credit for. She agreed that Mother appeared to be genuine in her desire to be sober.

Erica Larry testified about the Department's investigation. According to Larry, Mother endangered the children by her drug use, leaving them in a home where there was a registered sex offender, and failing to address possible allegations of sexual abuse of the children. The children were removed after Mother had two positive drug tests out of three during the investigation while she continued to deny her drug use and had not completed any recommended

services. Mother's failure to progress with the services offered caused the Department to seek removal of the children.

Pamela Martinez-Tovar testified that she works in the conservatorship unit of the Department and received this case in June 2012. By August 2012, Mother had her psychological assessment with Foster, completed parenting classes, and began counseling with Cannon. However, Mother was still testing positive for drugs in September 2012. In October, Mother requested a home visit of her apartment which was performed in November 2012. Martinez-Tovar testified that when she arrived at the home, Mother stated she was moving temporarily to her grandmother's home. Martinez-Tovar testified the home she visited was not safe or appropriate for children. In November, Mother admitted she was still using methamphetamines. In January 2013, Mother lacked a stable home and although she was continuing with outpatient drug treatment, continued to test positive. Although Mother completed her IOP in February, the following month it was reported that Mother was not attending the second phase of her drug treatment and continued to test positive for drugs in March and April. In May, the court ceased Mother's visits with the children. In June, Mother acknowledged she was continuing to use methamphetamines and had been throughout the duration of the case. Of the 32 drug tests Martinez-Tovar gave to Mother, two thirds or more were positive for methamphetamines and amphetamines.

In July 2013, Mother went to inpatient drug treatment and by August she was living with her grandparents and continuing her IOP. In September, Mother was arrested for outstanding warrants after the police responded to a domestic disturbance complaint at her grandparents' home involving Mother and her sister. According to Martinez-Tovar, Mother is not able to put the children's needs above her own needs and that she is "just now learning to take care of herself" and "still needs the assistance of her grandmother to take care of herself." Martinez-

–8–

Tovar also expressed doubt about Mother's ability to protect the children from those that might endanger them. She explained that although Mother had over one hundred days of sobriety, she is not ready to parent.

Mary Myers testified that she is a CASA[7] volunteer/guardian ad litem for the children. She indicated that during the last six months, she has seen an overall improvement in the children's social skills and their education levels. Myers believes that Mother has not put her children's interests ahead of her own interests and has left the children in a dangerous environment. She further stated that she believes the improvements Mother has made to this point are not enough to warrant the return of her children.

Reviewing the record before us under the applicable standards set forth above, we conclude that the evidence is legally and factually sufficient to support a finding that termination of Mother's parental rights was in the best interest of the children. Although Mother testified she had been sober for the four months preceding the trial and two of her counselors testified that she was very motivated to continue treatment, her ability to stay sober long term was far from certain at the time of trial. And even assuming Mother was able to maintain her sobriety, there was evidence Mother needed considerable support to help her parent. Despite the parenting classes she attended, witnesses doubted Mother's ability to protect the children and put their needs above her own. She also had a pending charge for possession of less than a gram of methamphetamine. Mother's visitations with the children were terminated in April 2013 and the children were doing very well in their current foster home. At the time of trial, Mother was living with the grandparents with whom the children were living when the Department first became involved in the case. The Department was seeking termination of Mother's rights so that the children could be adopted and have a stable and permanent home. Having concluded that the

[7] Court Appointed Special Advocate

evidence was legally and factually sufficient to support the best interest finding, we resolve Mother's second issue against her.  We affirm the trial court's judgment.

_____
DAVID EVANS
JUSTICE

131674F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF: A.W. AND D.W., CHILDREN

No. 05-13-01674-CV

On Appeal from the 422nd Judicial District Court, Kaufman County, Texas
Trial Court Cause No. 86044-422.
Opinion delivered by Justice Evans, Justices Moseley and Bridges participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Texas Department of Family and Protective Services recover its costs of this appeal from appellant Amanda Pickeral.

Judgment entered this 10th day of April, 2014.

/David Evans/
DAVID EVANS
JUSTICE